UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| HECTOR RAMIRES, | ) ) ) | |
| Petitioner, | ) ) | |
| v. | ) ) | Criminal Action No. 15-10338-FDS |
| UNITED STATES OF AMERICA, | ) ) ) | |
| Respondent. | ) ) ) | |

**MEMORANDUM AND ORDER ON PETITIONER'S MOTION TO VACATE**

**SAYLOR, C.J.**

Petitioner Hector Ramires has moved to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 on the ground that he received ineffective assistance of counsel during the plea process in violation of his Sixth Amendment rights. For the reasons set forth below, the motion will be denied.

**I.   Background**

Because the conviction resulted from a guilty plea, the following facts are taken from the sentencing hearing and the Presentence Investigation Report ("PSR"), unless otherwise noted. *See United States v. Connell*, 960 F.2d 191, 192-93 (1st Cir. 1992); *United States v. Garcia*, 954 F.2d 12, 14 (1st Cir. 1992).

MS-13 or La Mara Salvatrucha is a violent transnational criminal organization operating in the United States and other countries. (PSR at ¶¶ 11-12). In 2013 and 2014, Hector Ramires a/k/a "Cuervo" was a member of the MS-13 gang and part of the Enfermos Criminales Salvatrucha ("Enfermos" or "ECS") clique of MS-13. (*Id.* at ¶¶ 23-24).

In the spring of 2014, members of the Enfermos clique increasingly began committing acts of violence against suspected gang rivals. (*Id.* at ¶¶ 27-31). The examples of racketeering activity committed by Ramires on behalf of MS-13 included (i) a March 28, 2014, attempted murder during which Ramires and other MS-13 members stabbed and robbed a victim while Ramires was armed with a knife (*id.* at ¶¶ 45-48); (ii) an April 9, 2014, robbery during which Ramires and another MS-13 member robbed a man while Ramires was armed with a fake gun (*id.* at ¶¶ 49-51); and an October 18, 2014, murder during which Ramires shot at a gang rival on a residential street but missed his intended target, and the stray bullet struck and killed a mother of three named Katerin Gomez as she was looking out of a window (*id.* at ¶¶ 33-44).

On October 18, 2014, two days after the death of Katerin Gomez, Ramires was arrested on state charges of first-degree murder. (*Id.* at ¶¶ 2, 92). While the state case was pending, Ramires was arrested in 2016 on federal charges. (*Id.* at ¶ 3).

On May 15, 2017, a federal grand jury returned a fifth superseding indictment charging Ramires with conspiracy to conduct enterprise affairs through a pattern of racketeering conspiracy, in violation of 18 U.S.C. § 1962(d). (ECF No. 1107, 4). On October 26, 2017, Ramires pled guilty to Count 2 of the indictment. As part of his guilty plea:

> Defendant also admit[ed] responsibility for the following acts that were part of the racketeering activity charged in Count Two: (1) the murder of Katerin Gomez on or about October 18, 2014, as summarized in paragraph 29(a) of the Fifth Superseding Indictment; (2) the attempted murder of Victim No. 5 on or about March 28, 2014, as summarized in paragraph 29(g) of the Fifth Superseding Indictment; and (3) the robbery of Victim No. 8 on or about April 9, 2014, as summarized in paragraph 31(a) of the Fifth Superseding Indictment, all of which were attributable to, and were reasonably foreseeable by, Defendant.

(ECF No. 1488, 1).

More specifically, as to the murder of Katerin Gomez, Ramires admitted to the following conduct during his Rule 11 hearing:

THE PROSECUTOR: … And finally, evidence would show that the defendant was responsible for the murder of Katerin Gomez on October 18th, 2014. Evidence would show that on that night, on the night of October 17th leading up to the morning of October 18th, Mr. Ramires was out on the streets of Chelsea with codefendant Galacia-Barillas. Mr. Ramires was armed with a gun that night, as he and his fellow MS-13 members were out in the streets of Chelsea.

The evidence would show [that] when they were near the area of Shawmut Street in Chelsea, Ramires and Barillas came upon a group of individuals believed to belong to a rival gang. A verbal altercation occurred. That group [included] an individual named Alex Rodrigues, and evidence will show that during this altercation, Mr. Ramires took out the firearm he was carrying and fired it at Alex Rodrigues. The shot fired by Mr. Ramires missed his intended victim. This altercation occurred outside the Harbor Cove Shelter on Shawmut Street.

The government would show that Katerin Gomez, the mother of three, was staying at the shelter with her children. Upon hearing the altercation outside her window, Ms. Gomez and her eldest daughter went to the window to see what was happening outside. The bullet fired by Ramires missed his intended victim and struck Ms. Gomez in the head killing her in front of her daughter. The cause of death was homicide. The manner of death was a gunshot wound to the head as determined by the medical examiner and as referenced in Ms. Gomez' death certificate. Part of the incident was also caught on surveillance video.

At trial, the government would also establish through evidence obtained from the defendant's phone, his intent, among other things, a picture of a gun was recovered from his phone as well as a note on his phone where the defendant admitted that he was known as Cuervo, that he was a member of ECS, and that he often hung out with his boys and was out trying to shoot rival gang members who carried other weapons.

Based on all of that, the government would hold Mr. Ramires responsible for the murder of Katerin Gomez as well. Those would be the facts at trial.

THE COURT: Mr. Ramires, do you disagree with anything in the government's description of the facts?

THE DEFENDANT: No.

THE COURT: Do you admit responsibility for the murder of Katerin Gomez on or about October 18th, 2014?

THE DEFENDANT: Yes.

(Hrg. Tr., Oct. 26, 2017, 22-24).

Ramires was sentenced on April 11, 2018, to a term of 324 months in prison, followed by supervised release for a term of five years. Judgment entered the following day on April 12, 2018. (ECF No. 2302-03). Approximately three years and nine months later, on January 19, 2022, he filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. The government filed an opposition to that motion on April 3, 2024.

In his motion, Ramires alleges that he received ineffective assistance of counsel during the plea process. He contends that "the facts of the offense were Mr. Ramires fired a warning shot in the air and Ms. Gomez was killed by the bullet in her apartment unintentionally with the reckless conduct." (ECF No. 3258, 5). He further contends that had he "been properly advised of the fact the conduct of the offense constituted manslaughter there is a reasonable probability he would have exercised his constitutional right to a jury trial." (*Id.* at 12). In addition, Ramires states that "in the event the government argues that his petition is untimely," he should be "granted equitable tolling because he was denied meaningful access to the courts during the pandemic." (*Id.* at 5).

## II.    Legal Standard

Under 28 U.S.C. § 2255, a prisoner in custody "claiming the right to be released" may file a motion to vacate, set aside, or correct a sentence. The relief requested may be granted on the grounds that the "petitioner's sentence (1) was imposed in violation of the Constitution; (2) was imposed by a court that lacked jurisdiction; (3) exceeded the statutory maximum; or (4) was otherwise subject to collateral attack." *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998). The petitioner bears the burden of establishing by a preponderance of the evidence that he is entitled to relief under § 2255. *Id.*; *United States v. DiCarlo*, 575 F.2d 952, 954 (1st Cir. 1978). In deciding whether a petitioner has met that burden, the court generally must accept his factual statements as true, "but . . . need not give weight to conclusory allegations, self-interested

4

characterizations, discredited inventions, or opprobrious epithets." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993).

### A. Period of Limitation and Equitable Tolling

Congress has established a one-year period of limitation governing motions for relief under § 2255. 28 U.S.C. § 2255(f). The one-year period runs from the latest of one of four dates:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.*

A court may extend the one-year limitation filing period under a theory of equitable tolling. A petitioner bears the burden of demonstrating the basis for equitable tolling by making two showings: "1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa v. United States*, 2012 WL 6626646, at *3 (D. Mass. Dec. 18, 2012) (quoting *Ramos-Martinez v. United States*, 638 F. 3d 315, 322-23, 325 (1st Cir. 2011)).

### III. Analysis

Petitioner's motion is not timely under any of the four prongs of § 2255(f). As to the first prong, because petitioner never appealed to the First Circuit, his conviction became final on April 26, 2018, 14 days after the entry of judgment. Fed. R. App. P. 4(b)(1)(A)(i). The present

motion was not filed until January 19, 2022. (ECF No. 3196). That date is nearly three years and nine months after the date his conviction became final. As a result, his motion is untimely under the first prong of § 2255(f)(1) by nearly two years and nine months. *See* 28 U.S.C. § 2255(f)(1).

As to the second prong, petitioner does not contend that governmental action in violation of the Constitution or laws of the United States created an impediment to making his motion. As to the third prong, he does not contend that he is asserting any right newly recognized by the Supreme Court. As to the fourth prong, he does not contend that any of the facts supporting his claim were newly discovered or could have been previously discovered through the exercise of due diligence. Therefore, the second, third, and fourth prongs of § 2255(f) are not relevant.

A court may extend the one-year limitation filing period under a theory of equitable tolling if a petitioner shows that "he has been pursuing his rights diligently" and "some extraordinary circumstance stood in his way and prevented him from timely filing." *Figueroa*, 2012 WL 6626646, at *3. No such equitable tolling is warranted here.

First, petitioner has not demonstrated that he was pursuing his rights diligently from the date his conviction became final until the date this motion to vacate, set aside, or correct his sentence, pursuant to 28 U.S.C. § 2255, was filed on January 19, 2022. He did not file for an extension during that period, and he has failed to make any other showing that he was pursuing his rights diligently during that time. *See, e.g.*, *Mack v. Alves*, 2022 WL 623734, at *2 (D. Mass. Mar. 2, 2022) (declining to apply equitable tolling to habeas petition despite COVID-19 restrictions because petitioner failed to show why he was unable to file his petition during the initial months of the limitation period before COVID-19 restrictions were imposed).

As to "extraordinary circumstances," petitioner has made no allegations concerning any

specific impediments that prevented him from timely filing; rather, he makes a generalized claim about being "denied meaningful access to the courts during the pandemic." (ECF No. 3258, 5); *see, e.g.*, *Hisert v. Blue Waters Dredging, LLC et al.*, 2021 WL 1178301, at *1 n.1 (D. Mass. Mar. 29, 2021) (noting that the First Circuit dismissed a cross-appeal on timeliness grounds even though plaintiff contended that the COVID-19 pandemic justified his untimely filing, because he did not "show[] any *specific* impediment to timely filing that would warrant equitable relief") (emphasis added).

More importantly, the time to file, absent tolling (that is, one year from the time the judgment of conviction became final), expired in April 2018. Lockdowns due to the COVID-19 pandemic did not begin until March 2020. That means that petitioner had almost two years to make a timely filing before any lockdowns due to the pandemic began.

In summary, the motion to vacate was filed outside the relevant time period and petitioner has not shown that the limitation period should be extended based on equitable tolling. His claim is therefore time-barred.

### IV.   Conclusion

For the foregoing reasons, the motion of petitioner Hector Ramires to vacate, set aside, or correct his sentence is DENIED.

**So Ordered.**

/s/ F. Dennis Saylor IV
F. Dennis Saylor IV
Chief Judge, United States District Court

Dated:  April 12, 2024